We're happy to hear arguments in No. 13, 1888, Moon v. BWX Technologies. Good morning. My name is Sid Kirstein. I'm here on behalf of Judy Moon individually and as executor of her husband, Leslie Moon's estate. As the court probably is well aware, this is an appeal from an ERISA case that was dismissed on a 12B6 motion to dismiss for any discovery had occurred in the case on the basis that the former employer of Mr. Moon, BWXT, as a matter of law, was not and could not be an ERISA fiduciary. And we certainly concede that you have to be a fiduciary or a plan administrator or a plan sponsor, perhaps. I'm maybe going a little too far, to be a proper defendant. But we contend that in this case the former employer of Mr. Moon, which is BWXT, was a proper ERISA fiduciary. And I will point out at the outset, this is an unusual ERISA case. You know, it started in state court. It was remanded. This court found on appeal that it was integrally related to an ERISA plan and held that the federal courts had jurisdiction under ERISA. We went back. A motion was filed at that point in time for the district court saying that BWXT is not a plan fiduciary. And the court accepted that. Now, it is a former employee as a state suing a former employer over benefits that arose on a post-employment basis. And those factors are not your typical ERISA type case. And they do give rise to a little twist and But as far as the, I'll call it the procedural issue of whether or not BWXT was a proper ERISA fiduciary, let me say at the outset, the only entity that Mr. Moon and Mrs. Moon ever dealt with was BWXT. The only entity they ever dealt with. So that is a significant factor the court needs to consider in evaluating could it be an ERISA fiduciary because they are the only ones we dealt with. This court has held it is integrally related to an ERISA plan and the only entity we dealt with was BWXT. What provision of ERISA did they violate? Well, several. Breach of fiduciary duties, number one. It's not a provision of ERISA. It's a remedy under ERISA. Okay, so I'm asking you what provision? When you have a remedy, you have to have a right first. So what provision of ERISA? Let's go beyond this business about whether they are a trustee or not. What provision of ERISA did they violate? ERISA requires that the fiduciary deal in good faith with the plan participants and that they have plan benefits provided and when plan benefits are provided that they posture, but there were plan benefits offered on a post-petition basis, at least that's our allegation, and on a 12B6 motion, the district court and this court have to accept the allegations as true and accurate for purposes of a 12B6 motion. We look at the ERISA plan, right? Not in this context completely, no ma'am. Well, how did you get a right? We've already This court's also determined that this is an ERISA case to which equitable estoppel and other equitable remedies may apply and this court has already established or the Supreme Court has already established in Amara and McCutcheon that in the event that the plan terms do not specifically prohibit a particular claim, that that particular claim can be filled in through equitable principles and in McCutcheon it was filled in through a common law rule of the common fund doctrine that an attorney who goes in and collects a common fund isn't going to be paid out of the common fund and in this case we are simply saying that there are common law principles, i.e., equitable estoppel being one, that would have stopped BWXT from denying that it is obligated on a claim that it offered and the offering seems to be There has to be an underlying basis upon which you ground the claim, but what is that? The underlying basis was established by this court when this court said that it is integrally related to an ERISA plan. It didn't say the claim was part and parcel of the written ERISA plan and it certainly couldn't have because the ERISA plan, as we all know, says that it no longer applies once you are terminated. So we are stuck with that, but in the context of trying to come up with some type of equitable remedy, the law does allow and we are certainly pursuing that claim that when promises have been made on a post-employment basis, even though the plan says there are no benefits available for life insurance unless you convert within 31 days, the plan doesn't say that the employer itself cannot make promises, collect premiums, collect a final premium even after death, knowing or should know full well that there is an obligation asserted with that and that the employer can be held responsible for that. In the prior decision from this court, it said, far from indicating an independent post-employment contract for benefits, the documents on which the talent relies, all plainly demonstrate that her claim stems from nothing more than Mr. Moon's enrollment in the run-of-the-mill employee benefit plan. I'm still not sure what you base the claim on. To apply an equitable remedy, there has to be an underlying basis either in the statute or something else if you can identify it that gives you a ground for the claim. And at page 89 of the joint appendix, the court went on to say the merits of Ms. Moon's equitable estoppel and breach of fiduciary claims are less clear, citing the Amare case and now the McCutcheon case that follows that. And so this court I think was basically saying a strict reading under the plan, you didn't convert within 31 days, you don't have a claim. Can you at the point of the plan and say why there should be an equitable remedy under the plan? And that's what we're trying to tease out from you. You can't just say, okay, well, that means, because at least I don't read the opinion as saying that. The plan does. It doesn't mean that we just scoot the plan and you get some equitable relief. The plan does say at page 42, it's an SPD, it's not the plan terms itself. That's in the other appendix. We didn't include that, that the description of this life insurance benefit is not intended as an employment contract or guarantee. The plan sponsor reserves the right to modify, amend, suspend or terminate the plan at any time. Now, the plan sponsor stated to be McDermott Incorporated, and there seems to be an argument that McDermott International Incorporated is not the same as McDermott Incorporated. We haven't had an opportunity to explore that because no discovery has occurred. However, the plan does indicate on its face that it can be modified at any time. And we simply say that the plan was modified in this context when BWXT took it upon itself to. But BWXT is not reading from the same thing you were reading from, JA42. They're not the plan sponsor or the plan administrator. They may not be, but they may be one in the same. They may be one in the same. We don't know because discovery hasn't occurred. We don't know that for certain. They're not stated on the face of that, I agree with you, certainly. But we have been thrown out before any discovery occurred in this particular matter. But my point was that the plan clearly provides that it can be changed and modified. And the plan doesn't address and doesn't preclude post-employment modifications by BWXT itself. And in this case that we submit and we have argued that there was a post-employment modification by BWXT itself. It may not have been wholly intentional and I'll recognize that point. But the point is once it started receiving the premiums and then even after this man's death, once it accepted $1,700 in a lump sum premium payment to complete all payments, at that point in time equitable estoppel, reformation, surcharge and other equitable remedies came into play to enforce the obligations of the ex-employer. Otherwise the ex-employer is allowed to take money without any concern for any ramifications for that and not advise the ex-employee that your payments are not going to help you in this regard because you don't have any coverage and we're not acquiring any coverage for you. Although they might have, we don't know that because no discovery has occurred. And then denying coverage when the man dies during the year 2006 during which all the premiums were being paid and received. Let me try one more time. It seems to me pretty clear the Supreme Court has said you can't substitute equitable remedies for the plan. The only thing the equitable remedies give you a right to is that the plan is somehow unclear. Okay. So where is the plan here unclear? It's not only unclear, it's if the plan has gaps or incompleteness. All right. As a certain issues. And in this case the plan had gaps and incompleteness as to post-employment offers of benefits by BWXT. And it doesn't preclude those. But if you're familiar with regular contract law, if you have a contract, that's it. And you don't amend it orally. Right? You have a written contract. That part is correct. That's what this is. But ERISA is not an ordinary contract. ERISA is governed by trust law provisions, as you know. And those trust law provisions are engrafted into ERISA. And the employer is responsible under trust law if it receives money to make sure that money is held and used in the proper manner. And I think this case is determined, I don't have a lot of time, but let me quickly, by the definition of an ERISA fiduciary. And that is found under 29 U.S. Code 1002, Subpart 21. And there are two parts there. It says in Subpart 1, which consists of two alternate, that anyone who exercises discretionary authority or discretionary control regarding the management of the plan, in this case the plan would be the offer to Mr. Moon, becomes an ERISA fiduciary. And more importantly, the second part of Subpart 1 says that anyone who exercises any, not discretionary, but any authority or control respecting the disposition or the management of the assets, becomes an ERISA fiduciary. And an ERISA fiduciary can be a named fiduciary, or an ERISA fiduciary can be a de facto fiduciary. And in this case, BWXT became a de facto fiduciary as to Mr. Moon's offer of benefits, because they got the money, they managed the money, they held the money, they disposed of the money, and no one else was involved. So on that basis alone, they automatically became a de facto fiduciary as to the plan or the offer of benefits they made to Mr. Moon on the post-employment basis. As I read your pleadings, you have pled and argued that there were two events that created some relationship with the employer and your client. One was collecting premium money from you. No, sir. I don't say that. One was receiving it and managing it and controlling it. The district court said all we did, all BWXT was collected. We allege that they not only collected it, but they received it, they managed it, they handled it, they disposed of it. They received the money. It wasn't passed along to MetLife or anybody else. So we didn't just collect the money, went a lot further. We managed the money, which is what the definition says. If you dispose or manage the assets, you are a de facto or a fiduciary, however you want to describe it. Then the other aspect, which the district court totally ignored, was they made the decision themselves to deny the claim. We submitted the claim to BWXT, not to anyone else. They said they investigated it. They came back with a letter which said, well, we've investigated it, and you didn't file your, you didn't convert it within 31 days. That's a very clever and sleek way of- The denial of your second amendment, proposed second amended complaint, alleges management and retention of the funds. They denied the second amended complaint, so we haven't gotten to that one yet, but let me see if I can find it. Or the first amended complaint for that matter. We said that all monies were paid to them. Which paragraph? I'm on page 116, which is the second. The second amended complaint? Yeah. Paragraph 23, page 116, defendants accepted all payments shown on Exhibit C without objection or exception, never advised Mr. Moon during his lifetime the benefits were not in effect. Exhibit C in the original showed payments to BWXT. You, you, I thought had just told us that you alleged that they managed and administered these monies that came in, and that's what I'm looking for, is where you put that. Yes, sir. I, I'm embellishing a little bit on the word acceptance, but when I say they accepted them without exception, and it says the same thing in paragraph 24, I, I think the court should give us a fair reading of that statement. We never said at any point in time that the monies were passed along to MetLife or that MetLife was involved in any way. We've never named MetLife as a defendant or anybody else as a defendant. So I think that the only fair inference from the use of the word that they accepted these payments and we detrimentally relied upon their offers is that they took the money and they handled the money in their general fund or they otherwise managed the money, and that's what our, certainly what we are saying in that regard. I've got 13 seconds. Unless the court has other questions, I'll try to reserve some. I may have to have the additional five. Okay. Any other questions the court may have at this time? We're happy to hear from you. Thank you very much. Has PWX refunded this money? It has not. Why not? They've not asked for it. What they've always asked for. Well, we've, we've always been willing to return the premium payments, and I'll represent that to the court. We'd be happy to return the premium payments, but they've never, they've, You owe them interest on them now. You've had it all this time. Of course. Of course. But that's not what this case is about. They've always just demanded the entire coverage amount. Again, my name is Joe Rainsbury, representing the defendants in this case. I think the key issue in this case is whether an employer's routine processing of a benefits payment without notifying a participant that coverage had lapsed is a fiduciary act. But before I get to that, I want to address briefly the estoppel point. They've asserted the estoppel claim as a separate state law claim. This court has held that plaintiff's action has been completely preempted by ERISA. And the practical effect of that is to transform his state law, common law claims into statutory claims. So he's got to find a statutory pigeonhole to, to place his estoppel claim. The only logical place that is plausible is 1132A3. And this, this authorizes actions for other appropriate equitable relief to enforce the terms of the plan or ERISA. The problem with the estoppel claim is that a plaintiff is attempting to use equitable relief to vary the terms of the plan, not to enforce the terms of the plan. And this is exactly what the Supreme Court in the McCutcheon case said that you can't do. And, I mean, let's be clear, the, the, the plan language on this point on his eligibility couldn't be clearer. It says when you cease active employment, which is defined as working during the, the month of the insurable claim, then your coverage ceases. And you have, if you want to continue coverage, you have to arrange for a separate plan with, with the insurer, MetLife. So plaintiff's estoppel claim is trying to vary the terms of the plan, which the Supreme Court has said you cannot do. And so that claim doesn't get off the ground. Let me turn to the fiduciary duty claim. And I think plaintiff concedes that this is the linchpin for all of his claims, both the ones that are in the First Amendment complaint and, and those in the proposed Second Amendment complaint. Now fiduciary is not an all or nothing concept. You're only a fiduciary to the extent that you're acting as a fiduciary. So you have to look at the particular action that the plaintiff is claiming was wrongful. And in the present case, what plaintiff is claiming was wrongful was accepting payments without notifying the employee or the former employee of the lack of benefits. So I'll address each of those components in turn. Now take first the act of accepting the payment. In the district court, our argument was that this was not a fiduciary act. This is not a discretionary act. This is a routine administrative act, a clerical function, just accepting a check and depositing it. And it's not, doesn't exercise the sort of discretion that's required to be a fiduciary under ERISA. Now plaintiff is arguing that discretion is not necessary when the handling of money is that issue. And this argument fails for a number of reasons. First, it's waived because it was never raised below. I mean, if you look in the arguments, both on and in oral argument before the district court, plaintiff never argued that discretion was unnecessary when money was involved. In fact, in the opening brief in this case, he doesn't even argue that. It was raised for the first time in the reply brief. So this really is our first opportunity to respond to that. The second reason is that acceptance of premium payments is not the same as managing and disposing of plant assets. And, I mean, this is not just me saying this. Under the Department of Labor regulations that we cite, they specifically state that collection of contributions and application of contributions as provided in the plan is not a fiduciary function. And they contrast that later on in the regulation with exercising any authority or control respecting management or disposition of the assets of the plan. So clearly, there's a distinction between just routine acceptance of a premium payment and managing and controlling plant assets. And that makes sense. You know, under general trustee law, if you're the fiduciary and you're making investment decisions or decisions about who to pay, that generally is a discretionary function. Just accepting a check and depositing it is not a fiduciary function. Plaintiff cites no authority that the routine processing of benefits payments is a fiduciary act. The third reason the argument fails is it's really a red herring. Plaintiff is not suing to recover funds that have been mishandled or squandered or something like that. And as I mentioned before, defendants are and always have been willing to repay the premium payment. But that's not what plaintiff wants in this case. Plaintiff wants the entire coverage amount, which is what she sued for. But I think the fourth and the most important reason why the argument fails is that it would really impose onerous obligations on employers. Basically, every time an employer gets a check for benefits payment, you would have to verify for every single employee, for every single policy that the employee has, that the employee is eligible for coverage under that policy. And if you get it wrong, then the employer turns into an insurer. I don't know how many employers want to be in the business of life insurance. And so you have this, these alternatives, either you invest massive amounts of administrative costs in ensuring that for every payment you receive, the particular employee is eligible for all the benefits that he signed up for, or you run the risk of being an insurer and paying tens or hundreds of thousands of dollars or more. And I think employers, if they're faced with this massive administrative cost for litigation and exposures, would just stop offering the insurance benefits. It wouldn't, it just wouldn't be worth it. And this is exactly why Congress enacted ERISA, and why the written plan is central to ERISA. Because it is what streamlines administration of benefits claims. So it's no longer a case of my employer said this, or I did this, my employer did this. It's what does the plan say? And that's what Congress intended, and that's why the plan is central to ERISA. And this protects both employers and employees. And as the Court knows, in recent Supreme Court decisions, both the McCutcheon as well as Hymashaw v. Hartford Life have emphasized that the plan is central to ERISA, and you have to look at the plan to determine whether benefits are available. The second component of their fiduciary duty argument is just the failure to notify the employee that the coverage had lapsed. And again, this is not a fiduciary function. Advising an employee whether or not benefits are, he has or doesn't have benefits is not a fiduciary function. That's completely different from a planned fiduciary deciding in a particular instance whether a particular claimant is eligible for benefits. But the wrongdoing in this case was just, the alleged wrongdoing in this case was just silence, was just not telling the employee that coverage had lapsed. And that silence is not a fiduciary act. A plaintiff has argued that this is premature and that we need discovery, but what plaintiff is arguing was the wrongdoing was silence. You don't need any more discovery to determine, to outline silence. And silence, not telling somebody of their eligibility for benefits under a plan is not a fiduciary function. And we cited the case of Weeks v. Advance, which is directly on point. He's also arguing that BWXT was a fiduciary because you acted alone in reviewing and investigating the claim and alone denied the claim. So you were the sole discretionary factor there. Well I think that mischaracterizes what actually occurred. Ms. Moon, attorney, asked for claims forms from BWXT, claims forms for MetLife. BWXT looked at the matter and said, look, this guy wasn't covered because he didn't qualify because he was no longer an active employee. So they didn't adjudicate a claim, a formal claim. They just wrote him a letter saying, I'm sorry, it looks like you're out of luck, there's no coverage. So that's the first problem. The second problem is they're not claiming any misconduct with respect to that because that letter was accurate under the terms of the plan as this court has held, there was no coverage. So there was no misconduct there. And to be a fiduciary under ERISA, you have to be a fiduciary with respect to the particular conduct at issue. And the conduct at issue is just the acceptance of benefits and or the discussion of what the plan does or does not cover. If there are no further questions, I ask the court to affirm. I believe that ERISA requires someone to adjudicate a claim. And if BWXT didn't adjudicate the claim by saying we're not going to pay it for whatever reasons they come up with, we don't control their reasons, never do. No employee or former employee controls the reasons. When they come back and say we're not paying it, that's a claim denial. And when they are the ones who make the claim denial, yes, they are a ERISA fiduciary because they denied the claim. They singularly investigated and singularly denied it. Now, they may have denied it in a clever way, they may have denied it in as harmless and politically correct way as they could have. But ERISA requires that when a claim is filed, it be considered and approved or denied. And if it's not approved, it's denied. And that's what happened in this case. They denied the claim. And they received the money. And if they received any of the money, they became a ERISA fiduciary. And Justice Agee, I was looking because you said go to the second and then I went to the second amended complaint. The first amended complaint is earlier on and that's, I'm looking at appendix 26, which was out of Exhibit C to the first amended complaint, which is incorporated by reference and I think it's probably attached to the second, but it's referenced in the second as Exhibit C. And Exhibit C at page 26 specifically says payments by moon to BWXT slash McDermott. And it shows when they were made, the checks that were made. We've had copies of those checks, they're payable to BWXT. They're not made to an insurance company. They made to BWXT, each and every one of them. And then the letter at page 27 over there shows that Ms. Moon wrote a letter to BWXT saying my husband died and I've calculated out how much I owe. And the next to last paragraph, I'm closing the check for 1173 to cover the difference. Please advise if any more monies are due. They accepted that check. And I can't think of any equitable estoppel issue that rises any more strongly when after the man's dead, after you have the opportunity to look at this, if you choose to do so, you still accept his check and you've never refunded the money. They've never refunded the money. And they say today in courtroom, and I'm sure Mr. Rainsbury has a pure heart when he says that we've always been willing, but we haven't seen the money and it's never been refunded. We've never refused it. Have you ever asked for it? Excuse me? Did you ever ask for it? Haven't asked for it. Because we contend that it's been paid in good faith and the benefits are due. But they, they, several years have passed now and if they were going to refund it, I think the court could infer that it would have occurred prior to this time. The $2,973.36, is that the total amount of the premiums paid? For everything. For page 26? Yes, sir. That was based upon $228.72 a month for eight, for, for, for this. Does that, does that include anything other than the life insurance? It does. It does. It does include. What's, what's the total amount of the life insurance? It was 800 and some. 840, somewhere in that neighborhood. It's set forth on one of the documents. Now I would also just say to you, page 22, under paragraph 33, 34, 35, it said that BWXT and or McDermott, we allege, receive these payments in a fiduciary capacity with a duty or an obligation to either apply these payments towards the purchase of life insurance or to apply these payments to establish a self-insured fund to cover the state of contingency. If that doesn't state, about as clear as you can, that they took the money, they received the money and they were to apply the money under their control and under their management to do these things, and paragraphs 34 and 35 say the exact same thing in a different context. So I think we've clearly established that they receive the money and the definition of a fiduciary under RESSA says if you have any control over the assets, any, not discretionary but any, you are in a RESSA fiduciary and that's the narrow issue before us today, whether or not BWXT is or could be a RESSA fiduciary. We respectfully submit that they qualify as a RESSA fiduciary for denying the claim and for the ones who received the money and handled the money completely with no one else involved and that became a de facto fiduciary for the purposes of Mr. Moon's claim. I'd be glad to answer any questions. Thank you. Thank you very much. We will come down and greet the lawyers and go directly to the last one.
judges: Diana Gribbon Motz, G. Steven Agee, Stephanie D. Thacker